UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MUFTI ABDUL EL-MALIK- ALI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02365-SEB-TAB |
| | ) | |
| B. MILLER, | ) | |
| K PENNINGTON, | ) | |
| K PRIOR, | ) | |
| B GROVES, | ) | |
| RITCHEY, | ) | |
| M CONYERS, | ) | |
| D. ALSIP, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Addressing Cross-Motions for Summary Judgment as to Aramark Defendants**

Plaintiff Mufti Abdul El-Malik-Ali[1] is an Indiana inmate currently incarcerated at Miami Correctional Facility. He brings this action under 42 U.S.C. § 1983, alleging that the Aramark Defendants (Brandon Miller and Kelcie Pennington[2]) exposed him to unconstitutional conditions of confinement when he was incarcerated at Pendleton Correctional Facility ("Pendleton") because they made him wash dishes in a sink filled with a chemical called "Quat Plus" and denied his requests for protective equipment.[3] The Aramark Defendants filed a motion for summary judgment, and Mr. Ali filed a corresponding cross motion for summary judgment. For the reasons

---

[1] Mr. Ali is also known as Frances Smith-Bey, the name associated with his Indiana Department of Correction Number—955755. *See* dkt. 78-1 at 8. Because he prefers to be known as Mr. Ali, the Court uses that name.

[2] Mr. Ali identified these defendants as "B. Miller" and "K. Pennington" in his complaint. The **clerk is directed** to update the docket to reflect the correct names for Mr. Miller and Ms. Pennington.

[3] Mr. Ali also pursues claims against the other defendants. Those claims are the subject of separate motions for summary judgment, which the Court resolves by separate entries.

stated below, the Aramark Defendants' motion for summary judgment is **granted**, and Mr. Ali's summary-judgment motion is **denied**.

## I.
## Standard of Review

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

A party responding to a summary-judgment motion must "identify the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." S.D. Ind. Local Rule 56-1(b).[4] In addition, "A party must support

---

[4] Mr. Ali did not file a stand-alone response to the Aramark Defendants' summary-judgment motion. Instead, he filed his own motion for summary judgment. That motion, however, makes clear that he was also responding to the Aramark Defendants' summary-judgment motion. *See, e.g.*, dkt. 85-13 at 2

each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." S.D. Ind. Local Rule 56-1(e).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

### III.
### Factual Background[5]

When the parties file cross-motions for summary judgment, the Court normally takes the motions "one at a time." *American Family Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016). That is, for each motion, the Court views and recites the evidence and draws all reasonable inferences "in favor of the non-moving party." *Id.* That is not necessary here, however, because even when all evidence is interpreted in Mr. Ali's favor, the defendants are entitled to summary judgment.

---

(referring to declarations filed by the Aramark Defendants in support of their summary-judgment motion). The Court thus considers Mr. Ali's motion for summary judgment as both a motion for summary judgment and a response brief.

[5] For unknown reasons, the pages of Mr. Ali's motion for summary judgment were not filed sequentially. Instead, his supporting memorandum was broken up and thus docketed in multiple separate pieces—dkt. 85, dkt. 85-10 at 3–4, dkt. 85-13 at 2, dkt. 85-15, dkt. 85-16, dkt. 85-18 at 2–3, and dkt. 85-19 at 5. Mr. Ali also filed multiple other exhibits supporting his motion. In addition to filing a motion, Mr. Ali filed a supporting reply, dkt. 116, and accompanying affidavit, dkt. 117. Mr. Ali's motion and reply are not made under penalty of perjury, and thus the factual statements in them are not admissible on their own unless they are supported by other admissible evidence. *See Collins v. Seeman*, 462 F.3d 757, 760 n.1 (7th Cir. 2006) (concluding that unsworn statements do not satisfy the requirement that summary judgment materials be "made upon personal knowledge" and "set forth such facts as would be admissible in evidence"). The Court is not obliged to scour the record looking for evidence to support Mr. Ali's unsworn statements, so this section is based only on the specific exhibits that Mr. Ali cited in his motion and reply.

3

### A. The Parties

At all relevant times, Mr. Ali was incarcerated at Pendleton. Dkt. 78-1 at 13 (Ali Dep.). Defendant Brandon Miller was the Food Services Director for Aramark at Pendleton. Dkt. 78-2 ¶ 2 (Miller Dec.). As Food Services Director, Mr. Miller oversaw the operations of the food services at Pendleton, including the washing and sanitation of dishes. *Id.* At the time of the events in this suit, Defendant Kelcie Pennington was the Assistant Food Services Director at Pendleton. Dkt. 78-3 ¶ 2 (Pennington Dec.). As Assistant Food Services Director, she helped oversee the operations of the food services at Pendleton, including the washing and sanitation of dishes. *Id.*

### B. Exposure to Quat Plus and Requests for Protective Equipment

The kitchen at Pendleton has a three-basin sink. Dkt. 78-2 ¶ 4. One of the basins in the three-basin sink contains a sanitizing solution mixture. *Id.* The sanitizing solution is known as Quat Plus. Dkt. 78-1 ¶ 3. The Quat Plus is generally mixed by a machine that dilutes the solution with water prior to use. *Id.*

Mr. Ali's claims against the Aramark Defendants are based on injuries he claims to have suffered after being exposed to Quat Plus while washing dishes on October 9, 2019. Dkt. 78-1 at 24. On that day, Mr. Ali was working in the pots and pans area in the kitchen at Pendleton. *Id.* at 22. Aramark employee Todd Neal said that the kitchen was out of the chemicals usually used to clean and sanitize dishes, so to sanitize the pots and pans, they would need to use Quat Plus in the three-basin sink. *Id.* at 22–23. While Mr. Ali was sanitizing items in the sink containing Quat Plus, he felt a burning sensation. *Id.* at 23. At his deposition, Mr. Ali testified that he normally used protective equipment to do the cleaning job—including big aprons, rubber neoprene gloves, and eyewear—but, because he was being rushed and was given a direct order by Mr. Neal, he did his

4

job without protective equipment. *Id.* Mr. Ali stopped working in the kitchen about three weeks after the October 9 incident. *Id.* at 41.

Neither Mr. Miller nor Ms. Pennington was present when the October 9 incident took place, *id.* at 105–106, but Mr. Ali believes they should be liable for his injuries because they refused to provide him with protective equipment when he asked. *Id.* at 107, 114. To support that claim, Mr. Ali has submitted a letter to Mr. Miller dated February 7, 2019, in which he asked for non-slip tennis shoes, and "I2W gloves for: hot & cold slicing work etc." Dkt. 85-19. He has also submitted a request for interview form dated September 22, 2019, in which he directed the following inquiry to Ms. Pennington: "I am assigned to the dish tank currently I need some: gloves, rubber shoe covers non-slip type and I also need to know with whom I speak to for: glasses & mask when using chemicals for sanitation of the dish tank?" Dkt. 84-1 (errors in original). Ms. Pennington responded by stating, "You were issued a pair of state boots. Gloves and masks are not necessary when using chemicals that are properly diluted." *Id.*

In addition, Mr. Ali has submitted a letter dated September 26, 2019, to Mr. Miller in which he complains about being forced to work with a "bio nasty hazard"—described as trays covered with urine, feces, and razors—without protective equipment. Dkt. 85-19. No record evidence shows that Mr. Miller received that letter before the October 9 incident. Mr. Ali has also submitted a letter dated October 7, 2019, directed to Mr. Miller in which he complained about Quat Plus being used in the kitchen and stated that, on September 28, 29, and 30, 2019, he experienced burning and pain in his hands as well as stomach issues. Dkt. 85-5. No record evidence shows that Mr. Miller received this letter before the October 9 incident. Finally, Mr. Ali has submitted several letters and grievances prepared after October 9, 2019, in which he complained about having to work with Quat Plus without personal protective equipment. *See, e.g.*, dkt. 85-6 (letter dated

5

October 12, 2019); dkt. 85-7 (letter dated October 20, 2019); dkt. 85-9 at 2 (grievance dated October 15, 2019); dkt. 85-9 at 9 (grievance dated October 9, 2019).

Mr. Miller and Ms. Pennington have both submitted declarations stating as follows: Based on their experience and knowledge, personal protective equipment is not necessary when using the Quat Plus solution. Dkt. 78-2 ¶ 4 (Miller); dkt. 78-3 ¶ 5 (Pennington). They have been using the Quat Plus solution for years, have personally used the Quat Plus solution to wash dishes, have never personally been injured when using a Quat Plus solution, and have had the Quat Plus chemical come into contact with their skin and never been injured. Dkt. 78-2 ¶ 5 (Miller); dkt. 78-3 ¶ 6 (Pennington). Other than Mr. Ali's suit and another lawsuit filed by Bryson Street—which ended with judgment being entered against Mr. Street—they have no knowledge of any inmates who have been injured in any form by using the Quat Plus solution. Dkt. 78-2 ¶ 6 (Miller); dkt. 78-3 ¶ 7 (Pennington).[6] The Quat Plus solution is a standard, restaurant-grade food sanitizing solution that is safe for use by restaurant workers and safe for sanitizing food preparation equipment. *Id.*

Mr. Ali has submitted a label for Quat Plus.[7] The label says the following: (1) it is a violation of federal law to use the product in a manner inconsistent with its labeling; (2) "DANGER . . . CORROSIVE. Causes irreversible eye damage . . . Do not get in eyes, on skin or on clothing. Wear goggles or face shield, rubber gloves, and protective clothing . . . . Wash thoroughly with soap and water after handling"; and (3) "To sanitize pre-cleaned mobile items in public eating establishments (drinking glasses, dishes, eating utensils), immerse in a 200-400 ppm active

---

[6] The summary-judgment record does not include any evidence specifying the date or nature of Mr. Street's injuries.
[7] The label for Quat Plus is in the record in multiple places. In most of the copies of the label, the print is too small and blurry to read. The most legible copy of the label is in the record as dkt. 88-1, and the Court cites to that copy.

quaternary solution for at least 60 seconds making sure to immerse completely." Dkt. 88-1.[8] Mr. Ali also submitted a "Safety Data Sheet" for "Quat Plus W-1080-C Disinfectant Liquid Concentrate." Dkt. 85-2. That sheet states: "DANGER. CORROSIVE to skin and eyes." Dkt. 85-2.

### C. Mr. Ali's Injuries

At his deposition, Mr. Ali testified that, after coming into contact with the Quat Plus solution, he experienced, among other things, burns to his hands, face, genitals, and left foot. Dkt. 78-1 at 63.

## IV.
## Discussion

At screening, Mr. Ali was allowed to proceed with Eighth Amendment conditions of confinement claims against Mr. Miller and Ms. Pennington based on allegations that they directed him to wash dishes with dangerous chemicals without being provided with proper safety equipment. Dkt. 13.

Mr. Ali was a convicted prisoner at all relevant times. This means that the Eighth Amendment applies to his claims. *Estate of Clark v. Walker*, 865 F.3d 544, 546 n.1 (7th Cir. 2017) ("the Eighth Amendment applies to convicted prisoners"). The Eighth Amendment "standard encompasses both an objective and subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants [must be] deliberately indifferent to the substantial risk to the prisoner's health and safety." *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021) (internal quotation

---

[8] Mr. Ali claims that the label also says, "Do not use on utensils, dishes, glasses or cookware." Dkt. 85 at 1. That statement is misleading because the quoted language actually comes at the end of a section that begins, "To disinfect food service establishment or restaurant food contact surfaces" and gives directions for doing so. Dkt. 88-1 at 1. As explained, the rest of the label clearly contemplates that Quat Plus can be used—when properly diluted—on glasses, dishes, and eating utensils.

7

omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Minor injuries do not satisfy the objective component of an Eighth Amendment claim. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020).

For purposes of this analysis, the Court assumes without deciding that Mr. Ali suffered injuries serious enough to satisfy the objective component of the Eighth Amendment. The issue, then, is whether Mr. Miller or Ms. Pennington was deliberately indifferent to the risk of harm to Mr. Ali.

Deliberate indifference "requires more than negligence and approaches intentional wrongdoing." *Goodloe v. Sood*, 947 F.3d 1026, 1030 (7th Cir. 2020) (cleaned up). "[T]he evidence must show that the prison official . . . knew or was aware of—but then disregarded—a substantial risk of harm to an inmate's health." *Id.* Put another way, a defendant "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022) (quoting *Farmer*, 511 U.S. at 837).

It is undisputed that Mr. Miller and Ms. Pennington were not present in the kitchen on October 9, and Mr. Ali has not designated any evidence from which a reasonable jury could conclude that they forced him to work with Quat Plus that day without adequate protective equipment. Instead, non-defendant Mr. Neal was directing Mr. Ali's work that day. Mr. Miller and Ms. Pennington cannot be vicariously liable for Mr. Neal's actions simply because they supervise him. *See Burks v. Raemisch*, 555 F.3d 592, 593–94 (7th Cir. 2009). Instead, for a supervisor to be liable for the allegedly wrongful conduct of others, "he must both (1) know about the conduct and

(2) facilitate, approve, condone, or turn a blind eye toward it." *Gonzalez v. McHenry Cnty.*, 40 F.4th 824, 827 (7th Cir. 2022) (cleaned up). Under the second prong, "a supervisor is liable if he acted purposefully, knowingly, or recklessly, but *not* negligently." *Id.* (emphasis in original). That is, Mr. Ali must designate evidence from which a reasonable jury could conclude that Mr. Miller or Ms. Pennington actually knew that he was being required to sanitize dishes in Quat Plus without adequate personal protective equipment, actually knew that the practice carried a substantial risk of significant injury, and chose to ignore that risk.

Mr. Ali has not designated any evidence from which a reasonable jury could conclude that Mr. Miller or Ms. Pennington knew that—on October 9, 2019—he was forced to sanitize dishes in Quat Plus without adequate personal protective equipment. And even if he had, the undisputed record evidence establishes that Mr. Miller and Ms. Pennington believed that Quat Plus was safe to use without personal protective equipment so long as it was properly diluted—indeed, they both have testified that they have personally washed dishes in Quat Plus without being injured. Therefore, based on the designated evidence at summary judgment, Mr. Ali cannot establish that Mr. Miller or Ms. Pennington knew that washing dishes with Quat Plus without personal protective equipment was substantially likely to cause a significant injury and ignored that risk. Thus, they are entitled to summary judgment in their favor.

In opposing summary judgment (and seeking summary judgment in his own favor), Mr. Ali relies primarily on the Quat Plus label and Safety Data Sheet to contend that Mr. Miller and Ms. Pennington should have known that requiring inmates to use Quat Plus without personal protective equipment was likely to cause significant injury, no matter how much it had been diluted. *See* dkts. 85, 116.[9] In response, Mr. Miller and Ms. Pennington persuasively argue that the

---

[9] Mr. Ali also repeatedly insists that Mr. Miller and Ms. Pennington violated federal law. *See, e.g.*, dkt. 85-19 at 5 ("Mr. Miller and Kelsi are federal law violators by their own declarations."). The references

9

label warnings apply to undiluted Quat Plus and that there is no evidence that Mr. Ali was exposed to undiluted Quat Plus. Dkt. 110. The Court agrees. The Quat Plus label and Safety Data Sheet fail to specify the risk—if any—associated with coming into contact with diluted Quat Plus. Thus, they do not create a genuine issue of material fact as to whether Mr. Miller and Ms. Pennington ignored an *excessive* risk of harm to Mr. Ali. *See Brown v. Felten*, 721 F. App'x 538, 540 (7th Cir. 2018) (affirming grant of summary judgment on Eighth Amendment deliberate indifference claim based on claim that defendant doctor prescribed plaintiff Risperidone even though he was taking Zantac and Risperidone's warning label cautioned that taking Risperidone with Zantac may be dangerous because "this label does not specify the risk of taking Risperidone and Zantac together, so again a factfinder could not conclude [defendant] ignored an excessive risk"). At best, the existence of the label and Safety Data Sheet might establish that Mr. Miller and Ms. Pennington were negligent in allowing such a practice because they should have known that a significant injury might occur, but the deliberate indifference standard is higher. *Goodloe*, 947 F.3d at 1030.

None of Mr. Ali's arguments in opposition has merit. First, Mr. Ali claims that video footage from October 9, 2019, would show that the Quat Plus was not measured or tested by staff. Dkt. 116 at 5. He fails to explain how he has personal knowledge of this fact, but—even if he did—it is undisputed that Mr. Miller and Ms. Pennington were not present on October 9. Mr. Ali has not designated any evidence showing that Mr. Miller and Ms. Pennington knew about and condoned this practice, and they are not vicariously liable for the actions of other staff members. *See Burks*, 555 F.3d at 593–94.

---

to federal law on the Quat Plus label and Data Safety Sheet do not, by themselves, establish that anything Mr. Miller and Ms. Pennington did violated federal law, and Mr. Ali fails to specify what aspect of federal law they might have violated or how such a violation might show their deliberate indifference, which is the relevant issue before the Court.

10

Second, Mr. Ali seeks to hold Mr. Miller and Ms. Pennington liable because they failed to provide him with personal protective equipment when he asked. *See, e.g.*, dkt. 85-18 at 2. But the February 7, 2019, and September 26, 2019, letters do not relate to Quat Plus or personal protective equipment for washing dishes. Dkt. 85-19 at 4, 6. Thus, those requests do not help Mr. Ali establish that Mr. Miller and Ms. Pennington knew that using Quat Plus without personal protective equipment was substantially likely to cause a significant injury. The September 22, 2019, request for interview form to Ms. Pennington asks about getting personal protective equipment to sanitize dishes, dkt. 85-4, but the mere fact that Mr. Ali asked for protective equipment does not establish that Ms. Pennington knew of and ignored an excessive risk associated with using Quat Plus without protective equipment. Mr. Ali does cite to an October 7 letter in which he wrote to Mr. Miller complaining that he had experienced burning and pain in his hands and stomach issues after being required to use Quat Plus, *see* dkt. 85-5, but there is no evidence that Mr. Miller received that letter before the October 9 incident. Mr. Ali's citations to post-October 9 complaints do not help him, either, because there is no evidence that he sustained any further injury from working with Quat Plus without personal protective equipment after October 9. Thus, he cannot show that Mr. Miller and Ms. Pennington's failure to provide protective equipment in response to those requests caused him any harm. *See Armstrong v. Daily*, 786 F.3d 529, 553 (7th Cir. 2015) (a plaintiff must "establish one of the necessary elements of a constitutional tort: that the officer's act . . . caused any injury.").

Finally, Mr. Ali complains that the Aramark Defendants have refused to turn over emails and video footage that was preserved. Dkt. 85-13 at 2; *see also* dkt. 116 at 5. But he fails to show that he ever timely served the Aramark Defendants with a request for such materials and,

regardless, as explained in the Court's Order of February 9, 2022, it is far too late for Mr. Ali to raise discovery issues. Dkt. 100.

Ultimately, even taking the facts in the light most favorable to Mr. Ali, based on the designated evidence, no reasonable jury could conclude that Mr. Miller or Ms. Pennington was deliberately indifferent to a substantial risk that Mr. Ali would be seriously injured by washing dishes with Quat Plus without using personal protective equipment. Accordingly, Mr. Miller and Ms. Pennington are entitled to judgment in their favor.

# V.
# Conclusion

For the reasons stated above, the Aramark Defendants' motion for summary judgment, dkt. [75], is **granted**, and Mr. Ali's motion for summary judgment against the Aramark Defendants, dkt. [85], is **denied**. Mr. Ali's claims against the Aramark Defendants are **dismissed with prejudice**. The Court will resolve the other pending summary-judgment motions by separate entries, so final judgment will not enter at this time.

The **clerk is directed** to update the docket to reflect the proper names for the Aramark Defendants: Brandon Miller (currently identified as "B. Miller") and Kelcie Pennington (currently identified as "K. Pennington"). The **clerk is directed** to then terminate Defendants Miller and Pennington on the docket.

**IT IS SO ORDERED.**

Date: 9/22/2022

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

FRANCES SMITH-BEY a/k/a MUFTI ABDUL EL-MALIK- ALI
955755
Miami Correctional Facility - BH/IN
3038 West 850 South
Electronic Service Participant – Court Only

Brandyn Lee Arnold
INDIANA ATTORNEY GENERAL
brandyn.arnold@atg.in.gov

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com

Conner Ross Dickerson
Cohen & Malad, LLP
cdickerson@cohenandmalad.com

Sarah Jean Shores-Scisney
Stoll Keenon Ogden PLLC (SKO)
sarah.shores@skofirm.com

Georgianna Q. Tutwiler
HUME SMITH GEDDES GREEN & SIMMONS
gquinn@humesmith.com