UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MUFTI ABDUL EL-MALIK- ALI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02365-SEB-TAB |
| | ) | |
| B. MILLER, | ) | |
| K PENNINGTON, | ) | |
| K PRIOR, | ) | |
| B GROVES, | ) | |
| RITCHEY, | ) | |
| M CONYERS, | ) | |
| D. ALSIP, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Addressing Cross-Motions for Summary Judgment as to State Defendants**

Plaintiff Mufti Abdul El-Malik-Ali[1] is an Indiana inmate currently incarcerated at Miami Correctional Facility. He brings this action under 42 U.S.C. § 1983, alleging that the State Defendants (Justin Richey, Michael Conyers, and Duane Alsip[2]) exposed him to unconstitutional conditions of confinement when he was incarcerated at Pendleton Correctional Facility ("Pendleton") because they failed to provide him with protective equipment for use at his kitchen dishwashing job and delayed his access to medical care after he was injured while washing dishes.[3] The State Defendants filed a motion for summary judgment, and Mr. Ali filed a corresponding cross motion for summary judgment.

---

[1] Mr. Ali is also known as Frances Smith-Bey, the name associated with his Indiana Department of Correction Number—955755. See dkt. 78-1 at 8. Because he prefers to be known as Mr. Ali, the Court uses that name.
[2] Mr. Ali identified these defendants as "Ritchey," "M. Conyers," and "D. Alsip" in his complaint. The **clerk is directed** to update the docket to reflect the correct names for these defendants.
[3] Mr. Ali also pursues claims against the other defendants. Those claims are the subject of separate motions for summary judgment, which the Court resolves by separate entries.

# I.
# Standard of Review

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

A party responding to a summary-judgment motion must "identify the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." S.D. Ind. Local Rule 56-1(b).[4] "A party must support each fact

---

[4] Mr. Ali did not file a stand-alone response to the State Defendants' summary-judgment motion. Instead, he filed his own motion for summary judgment. Dkt. 88. That motion, however, can also be read as responsive to the State Defendants' summary-judgment motion. Because Mr. Ali is pro se, the Court construes his motion liberally and considers the document as both a motion for summary judgment and a response brief.

the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." S.D. Ind. Local Rule 56-1(e).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

When the parties file cross-motions for summary judgment, the Court normally takes the motions "one at a time." *American Family Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016). That is, for each motion, the Court views and recites the evidence and draws all reasonable inferences "in favor of the non-moving party." *Id.*

### III.
### Factual Background[5]

Except where specifically identified, the following facts are undisputed:

---

The Court also notes that the State Defendants' response to Mr. Ali's summary-judgment motion includes a section titled, "Statement of Disputed Material Facts." Dkt. 118 at 4–5. Read in context, the Court does not understand this section to be a list of facts that the State Defendants contend must be resolved at trial or a concession that their summary-judgment motion should be denied. Instead, the list consists of statements from Mr. Ali that the State Defendants contend are not supported by admissible evidence and facts that are not material to the resolution of the summary-judgment motions.

[5] Mr. Ali's motion and reply are not made under penalty of perjury, *see* dkts. 88, 121, and thus the factual statements in them are not admissible on their own unless they are supported by other admissible evidence. *See Collins v. Seeman*, 462 F.3d 757, 760 n.1 (7th Cir. 2006) (concluding that unsworn statements do not satisfy the requirement that summary judgment materials be "made upon personal knowledge" and "set forth such facts as would be admissible in evidence"). The Court is not obliged to scour the record looking for evidence to support Mr. Ali's unsworn statements, so this section is based only on the specific exhibits that Mr. Ali cited in his motion and reply.

### A. Exposure to Quat Plus and Interactions with Officer Richey

Mr. Ali's claims against the State Defendants are based on injuries he claims to have suffered after being exposed to a chemical called Quat Plus while washing dishes on October 9, 2019. Dkt. 78-1 at 24 (Ali Dep.). On that day, Mr. Ali was working in the kitchen at Pendleton. *Id.* at 22. Mr. Ali's direct supervisor—an Aramark employee named Todd Neal—directed Mr. Ali to sanitize dishes in a sink containing Quat Plus. *Id.* at 22–23. While Mr. Ali was sanitizing items in the sink containing Quat Plus, he got water containing the chemical on his hands, body, and shoes, and he felt a burning sensation. *Id.* at 23, 83. He testified that the Quat Plus solution dripped into his boot and soaked through his clothes, causing his groin area to get wet. *Id.* at 83–85. He testified that he believed that steam or vapor from the Quat Plus solution came into contact with his face. *Id.* at 84. At his deposition, Mr. Ali testified that he normally used protective equipment to do the cleaning job—including big aprons, rubber neoprene gloves, and eyewear—but, because he was being rushed and was given a direct order by Mr. Neal, he did his job without protective equipment. *Id.*

After the burning sensation started, Mr. Ali approached Defendant Officer Justin Richey. *Id.* at 76. At his deposition, Mr. Ali testified that Officer Richey was "the officer you go to if you have any kind of safety issue or . . . need to get medical treatment." *Id.* He also testified that it was Officer Richey's job to "fill out an offender report of injury and . . . get on that radio and get you from Point A to Point B to get decontamination started in an injury situation." *Id.* at 79. Mr. Ali told Officer Richey, "I need to go to medical . . . [M]y hands are on fire . . . . I just got burned by this chemical . . . I need medical attention," or words to that effect. *Id.* at 76, 79. At the time, Mr. Ali's hands were "kind of blistered," and his fingernails were "all bent and messed up." *Id.* at 27.

4

Officer Richey did not let Mr. Ali go to medical right away, and he did not complete an injury report. *Id.* at 76, 77. Instead, Officer Richey said, "Oh, you'll be all right" and made Mr. Ali go see Mr. Neal to get an injury report before he could go to medical. *Id.* at 76. Mr. Ali consulted with Mr. Neal and, after he did so, Officer Richey opened the door and let him go to medical. *Id.* at 77–78.

In the medical department, Mr. Ali encountered Defendant Nurse Brittney Moore-Groves, who refused to treat him immediately and sent him back to the kitchen to get more information from Mr. Neal. *Id.* at 25. He got the information and returned to medical with an injury report and material data safety sheet for Quat Plus. *Id.* at 25–26. When he returned, Nurse Moore-Groves was preparing supplies for the diabetic line, so she did not treat him right away. *Id.* at 26. Mr. Ali testified that, in total, 45 minutes to an hour passed between the time of his injury and the time he received treatment. *Id.* at 81.

At his deposition, Mr. Ali testified that he was suing Officer Richey because Officer Richey should have immediately filled out an injury report so that he could go to medical without delay. *Id.* at 79.

**B. Interactions with Mr. Conyers and Assistant Superintendent Alsip**

At his deposition, Mr. Ali testified that he was suing Mr. Conyers because Mr. Conyers should have provided safety equipment for inmates working in the kitchen. *Id.* at 72. Mr. Ali described Mr. Conyers as the person who "runs the one area where they have all the gloves, the overalls for winter for yard workers." *Id.* He testified that he wrote Mr. Conyers one or two letters and sent him several request-for-interview slips but never received any response. *Id.* at 71–72.

At his deposition, Mr. Ali testified that he was suing Assistant Superintendent Alsip because he asked Assistant Superintendent Alsip for personal protective equipment and Assistant

5

Superintendent Alsip failed to provide it. *Id.* at 70. Defendant Duane Alsip was an Assistant Superintendent at Pendleton. Dkt. 73-4 at 72.

In support of his deliberate indifference claims against Mr. Conyers and Assistant Superintendent Alsip, Mr. Ali has submitted a letter dated October 7, 2019, that is addressed to, among others, Mr. Conyers and Assistant Superintendent Alsip. Dkt. 88 at 3 (citing dkt. 88-4). In the letter, Mr. Ali complains about Quat Plus being used in the kitchen and states that, on September 28, 29, and 30, 2019, he experienced burning and pain in his hands as well as stomach issues. *Id*. No record evidence shows that Mr. Conyers or Assistant Superintendent Alsip received this letter before the October 9 incident.[6] Mr. Ali has also submitted a grievance dated October 15, 2019, describing the injuries he sustained on October 9 and asking for proper safety equipment. Dkt. 88 at 3 (citing dkt. 88-1 at 6). He has also submitted an email that was sent to, among others, Mr. Conyers by another member of Pendleton staff in response to the October 15 grievance. Dkt. 88 at 3 (citing dkt. 88-2). The email states, "Can you advise me on this? Frye—When will he receive his Hepatitis or did he already get it, does he need to have blood work done? B. Miller Can we get this offender gloves and can you look into this the functioning of the sanitizer. Smith & Conyers any input?" *Id.* Finally, Mr. Ali has submitted a letter dated October 20, 2019, that is addressed to, among others, Mr. Conyers and Assistant Superintendent Alsip. Dkt. 88 at 3 (citing dkt. 88-5). In the letter, he complains about the injuries he experienced after using Quat Plus, complains about not being given protective equipment, and states that he will leave his job in food services because of the problems. *Id.*[7]

---

[6] Mr. Ali testified that, on October 18, 2019, Assistant Superintendent Alsip responded "yes" when asked, "Did you receive my documents?" Dkt. 73-4. Even assuming that the "documents" included the October 7 letter, this statement does not establish that Assistant Superintendent Alsip received the October 7 letter before October 9.

[7] In his reply, Mr. Ali also states, "10-7, 10-12, 10-20 of 2019 D. Alsip [and] M. Conyers . . . recieved letters. The letters detailed, 'Serious Risks of Injury, Retaliation of Staff, Requests for P.P.E.[']"

At his deposition, Mr. Ali also testified that, on October 18, 2019, he happened to encounter Assistant Superintendent Alsip while walking. *Id.* at 73. He told Assistant Superintendent Alsip about the use of Quat Plus and his injuries. *Id.* He also asked Assistant Superintendent Alsip for gloves to use while working, and Assistant Superintendent Alsip said that he would get Mr. Ali some gloves to use at work. *Id.* at 74. In addition, Assistant Superintendent Alsip examined Mr. Ali's injuries and told him to go to the infirmary. *Id.* Despite his conversation with Assistant Superintendent Alsip, Mr. Ali was not provided with gloves, so he left his job in the kitchen on or about October 23, 2019. *Id.* at 74.

### C. Mr. Ali's Injuries

At his deposition, Mr. Ali testified that, after coming into contact with the Quat Plus solution, he experienced, among other things, burns to his hands, face, genitals, and left foot. Dkt. 78-1 at 63. He admitted that he was never diagnosed with chemical burns by anyone at Pendleton, although he emphasized that no one at Pendleton would ever examine his genitals or foot. *Id.* at 27, 29, 39.

In addition, Nurse Moore-Groves has submitted an affidavit stating that, when she saw Mr. Ali on October 9, she observed redness with a few tiny black scabs on Mr. Ali's right hand and did not observe any blistering, so she did not believe that Mr. Ali had suffered a chemical burn. Dkt. 73-1. As a result, she applied ointment and dressing to Mr. Ali's hand. *Id.* Mr. Ali's medical records also show that the injuries on his hands healed appropriately within less than two months, although he was still complaining about lingering symptoms as of November 29, 2019. *See* dkt. 73-

---

and cites to "Ex. # A, B, C, D, & #10." Dkt. 121 at 4 (errors in original). The Court is unable to locate these exhibits as there are no exhibits labeled A, B, C, D, or 10 attached to Mr. Ali's motion for summary judgment against the State Defendants or his reply in support of that motion. The Court is not obliged to scour the record to find the exhibits, but it appears that Mr. Ali is likely referring to the October 7, 15, and 20 communications discussed above.

3 (medical records). At his deposition, Mr. Ali disputed that his wounds had, in fact, completely healed by November 29, 2019. Dkt. 78-1 at 31.

## IV.
## Discussion

### A. Officer Richey

Mr. Ali claims that Officer Richey was deliberately indifferent to his serious medical needs. "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

#### 1. Objectively Serious Medical Condition

The Court cannot grant summary judgment to either Mr. Ali or Officer Richey on the question of whether Mr. Ali suffered from an objectively serious medical condition because disputed questions of fact remain for trial. For purposes of the Eighth Amendment, an objectively serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Thomas*, 2 F.4th at 721–22 (cleaned up).

Taking the facts in the light most favorable to Officer Richey, a reasonable jury might rely on Mr. Ali's medical records and Nurse Moore-Groves's testimony to conclude that Mr. Ali's injuries were minimal—amounting to nothing more than scabs that healed relatively quickly with minimal medical attention. *See generally* dkt. 81 at 7–8 (arguing that Mr. Ali did not suffer from an objectively serious medical condition). That is, a reasonable jury could conclude that Mr. Ali's

8

medical condition was not objectively serious enough to implicate the Eighth Amendment. *See Snipes v. DeTella*, 95 F.3d 586, 591 n.1 (7th Cir. 1996) (opining that a toe with a toenail that had been removed was not an objectively serious medical need).

But, taking the facts in the light most favorable to Mr. Ali, a reasonable jury could credit Mr. Ali's testimony that he suffered painful blistering on his hands and burns to his genitals and foot after coming into contact with an industrial cleaning solution. And, while Mr. Ali was never diagnosed with chemical burns on his genitals—in part, perhaps, because no one at Pendleton ever examined his genitals—a reasonable jury could conclude that burns on the genitals following a chemical exposure are the type of condition that is so obvious that even a lay person would recognize the need for a doctor's attention. Likewise, a reasonable jury could credit Mr. Ali's testimony and infer that his condition was serious enough to mandate treatment by a doctor from the fact that Nurse Moore-Groves did, in fact, provide treatment in the form of ointment.

Because Mr. Ali has not established, as a matter of law, that he suffered from an objectively serious medical condition, his motion for summary judgment must be denied as to Officer Richey. Officer Richey can, however, still prevail with his motion for summary judgment if he establishes that he is entitled to judgment as a matter of law on the question of whether he was deliberately indifferent to Mr. Ali's serious medical needs.

### 2. Deliberate Indifference

Deliberate indifference requires more than negligence or even objective recklessness. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021). Mr. Ali "must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Id*. (cleaned up; emphasis in original). On this point, "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or

9

unnecessarily prolonged an inmate's pain." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022) (cleaned up).

Mr. Ali claims that Officer Richey was deliberately indifferent to his serious medical needs because Officer Richey knew that Mr. Ali had just been exposed to an industrial chemical and was complaining of a burning sensation but refused to expeditiously complete an injury report form and instead delayed by sending Mr. Ali to consult with Mr. Neal. Officer Richey responds that no reasonable jury could find that he was deliberately indifferent "[g]iven the nature of Plaintiff's injury and brief nature of the delay." Dkt. 81 at 10. The Court cannot grant summary judgment to Officer Richey on the question of deliberate indifference because fact issues remain for trial.

Taking the evidence in the light most favorable to Officer Richey, a reasonable jury might rely on Nurse Moore-Groves's testimony about how minor Mr. Ali's injuries were and the fact that she—a trained medical professional—sent Mr. Ali back to the kitchen rather than treating him immediately to conclude that Mr. Ali's injuries were minimal and, thus, that Officer Richey did not know that any brief delay associated with sending Mr. Ali to consult with Mr. Neal would expose Mr. Ali to a substantial risk of serious harm. But, taking the evidence in the light most favorable to Mr. Ali, a reasonable jury could credit his testimony that his hands were blistered and that his clothing was soaked with a Quat Plus solution when he spoke to Officer Richey. Given that Mr. Ali told Officer Richey that his hands were "on fire" after being burned by an industrial cleaning solution, *see* dkt. 78-1 at 76, 79, a reasonable jury could therefore conclude that Officer Richey did, in fact, know that—at a minimum—even a slight delay in care would unnecessarily prolong Mr. Ali's pain.

Officer Richey argues—without citation to evidence or authority—that he could not have been deliberately indifferent because Mr. Ali only waited 45 minutes to an hour for care and "[a]ny

layperson would admit that they've spent an equivalent amount of time in a medical waiting room, filling out paperwork and waiting for their name to be called." Dkt. 81 at 9–10. A reasonable jury might reach that conclusion at trial, but on the record currently before the Court and taking all inferences in favor of Mr. Ali, the Court cannot say as a matter of law that any layperson would have to wait 45 minutes to an hour to receive treatment for injuries similar to those alleged by Mr. Ali. Notably, Officer Richey has not offered any explanation for why he initially ignored Mr. Ali and sent him to Mr. Neal to get an injury report. Without such evidence, the Court concludes that genuine issues of material fact remain for trial as to Officer Richey's state of mind.[8]

Accordingly, the State Defendants' motion for summary judgment must be denied as to Officer Richey. The Court emphasizes that this decision does not mean that Mr. Ali is likely to prevail at trial as to his claims against Officer Richey. While the Court concludes that Mr. Ali has made enough of a showing to keep his claims against Officer Richey for now, he will face an uphill battle at trial. Perhaps understandably, Officer Richey did not contest the issue of causation for purposes of summary judgment. *See, e.g.*, *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) ("[T]he causal link between a defendant's deliberate indifference and a plaintiff's injury is typically a question reserved for the jury. Where a plaintiff offers sufficient evidence from which a reasonable jury could infer delayed treatment harmed an inmate, summary judgment on the issue of causation is rarely appropriate." (internal citations omitted)). But, at trial, Mr. Ali will ultimately be tasked with proving that Officer Richey's fairly brief delay in allowing Mr. Ali to go to medical caused him harm—that is, that the delay exacerbated his injury or unnecessarily prolonged his pain. *See Reck*, 27 F.4th at 483. Given the limits on lay testimony about causation in such cases, Mr. Ali's task at trial will not be easy. *See, e.g.*, *Korte v. Exxonmobil Coal USA, Inc.*, 164 F. App'x

---

[8] The Court notes that Officer Richey does not argue that he is entitled to qualified immunity, thereby waiving the argument for purposes of summary judgment. Dkts. 82, 118.

553, 556 (7th Cir. 2006) ("Expert testimony is needed to establish causation in cases alleging an adverse health effect when the medical effects of exposure to the toxin are not within the ken of the ordinary person.") (cleaned up).

### B. Mr. Conyers and Assistant Superintendent Alsip

At screening, Mr. Ali was allowed to proceed with Eighth Amendment conditions of confinement claims against Mr. Conyers and Assistant Superintendent Alsip based on allegations that they failed to provide him with safety equipment that might have protected him from injuries he suffered as a result of working with Quat Plus. Dkt. 13.

"The Eighth Amendment prohibits the States from subjecting prisoners to conditions of confinement amounting to cruel and unusual punishment." *Giles v. Godinez*, 914 F.3d 1040, 1048–49 (7th Cir. 2019) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 345−47 (1981)). The Eighth Amendment "standard encompasses both an objective and subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants [must be] deliberately indifferent to the substantial risk to the prisoner's health and safety." *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021) (internal quotation omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Minor injuries do not satisfy the objective component of an Eighth Amendment claim. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020).

As explained above, neither Mr. Ali nor the State Defendants have shown that they are entitled to summary judgment on the question of whether Mr. Ali suffered from an objectively serious medical condition. Thus, Mr. Ali's motion for summary judgment must be denied as to Mr. Conyers and Assistant Superintendent Alsip. The sole remaining issue, then, is whether Mr. Conyers and Assistant Superintendent Alsip have shown that they are entitled to summary judgment on the issue of whether they were deliberately indifferent to Mr. Ali's conditions of

confinement. Deliberate indifference "requires more than negligence and approaches intentional wrongdoing." *Goodloe v. Sood*, 947 F.3d 1026, 1030 (7th Cir. 2020) (cleaned up). A defendant "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022) (cleaned up) (quoting *Farmer*, 511 U.S. at 837).

Mr. Ali alleges that Mr. Conyers and Assistant Superintendent Alsip violated the Eighth Amendment because they failed to provide him with protective equipment when he asked. Mr. Conyers and Assistant Superintendent Alsip argue that Mr. Ali cannot show that their failure to provide him with protective equipment when he asked caused him to suffer the harm at issue in this case—the injuries he sustained on October 9, 2019. Dkt. 81 at 8. The Court agrees.

Mr. Ali has failed to designate evidence from which a reasonable jury could conclude that he was injured on October 9 because Mr. Conyers and Assistant Superintendent Alsip ignored his complaints about Quat Plus. True, Mr. Ali has submitted a letter dated October 7, 2019, and addressed to Mr. Conyers and Assistant Superintendent Alsip in which he complains about the use of Quat Plus and states that, on September 28, 29, and 30, 2019, he experienced burning and pain in his hands as well as stomach issues. But there is no evidence that Mr. Conyers or Assistant Superintendent Alsip received that letter before October 9. Mr. Ali has also submitted several other documents dated after October 9 in which he complains about Quat Plus and asks for protective equipment and has testified that he asked Assistant Superintendent Alsip for protective equipment on October 18. But there is no evidence that he sustained any further injury from working with Quat Plus without personal protective equipment after October 9. Thus, he cannot show that Mr.

13

Conyers's and Assistant Superintendent Alsip's failure to provide protective equipment in response to those requests caused him any harm. *See Armstrong v. Daily*, 786 F.3d 529, 553 (7th Cir. 2015) (a plaintiff must "establish one of the necessary elements of a constitutional tort: that the officer's act . . . caused any injury."). Accordingly, Mr. Conyers and Assistant Superintendent Alsip are entitled to judgment in their favor.

None of Mr. Ali's arguments in response (or in support of his own request for summary judgment) change the conclusion that Mr. Conyers and Assistant Superintendent Alsip are entitled to judgment in their favor. Mr. Ali complains at length about the defendants' refusal to turn over various items in discovery (including a safety report and video footage). *See, e.g.*, dkt. 88 at 5; dkt. 121 at 1. But he fails to show that he ever timely served the State Defendants with a request for such materials and, regardless, as explained in the Court's Order of February 9, 2022, it is far too late for Mr. Ali to raise discovery issues. Dkt. 100. He also complains that "staff began to sup[p]ress my attempts to get documentation, photographs of my injuries," dkt. 88 at 4, citing to a copy of an offender injury report that he says was misplaced and/or purposely removed from his medical records, dkt. 88-7; and a request to "M. Rains" for someone to photograph his injuries, which request was denied, dkt. 88-8. But those documents do not suggest any wrongdoing on the part of Mr. Conyers or Superintendent Alsip, and—even if they did—Mr. Ali fails to explain how they support his claims of deliberate indifference against those defendants. Finally, Mr. Ali states, "Michael Conyers and Christina Conyers are husband and wife. C. Conyers began to thwart all my grievances to protect her husband." Dkt. 88 at 6. In support, he cites two request-for-interview forms in which Ms. Conyers stated that Mr. Ali's grievance appeals about the October 9 incident were untimely. Dkt. 88-13. Those forms do not show any wrongdoing on behalf of Ms. Conyers and do not show that her actions were attributable to her husband. And, in any event, Mr. Ali fails

to explain how the fact that his grievance appeals were denied supports his claims of deliberate indifference against Mr. Conyers and Assistant Superintendent Alsip.

Therefore, the State Defendant's motion for summary judgment must be granted as to Mr. Ali's claims against Mr. Conyers and Assistant Superintendent Alsip.

## V.
## Conclusion

For the reasons stated above, Mr. Ali's motion for summary judgment against the State Defendants, dkt. [88], is **denied**. In addition, the State Defendants' motion for summary judgment, dkt. [83], is **granted** as to Mr. Conyers and Assistant Superintendent Alsip, but **denied** as to Officer Richey. Mr. Ali's claims against Mr. Conyers and Assistant Superintendent Alsip are **dismissed with prejudice**. The Court will resolve the other pending summary-judgment motions by separate entries, so final judgment will not enter at this time.

The **clerk is directed** to update the docket to reflect the proper names for the State Defendants as follows: Justin Richey (currently identified as "Ritchey"); Michael Conyers (currently identified as "M. Conyers"); and Duane Alsip (currently identified as "D. Alsip").

The **clerk is directed** to then terminate Defendants Conyers and Alsip as defendants on the docket.

**IT IS SO ORDERED.**

Date: 9/22/2022

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

15

Distribution:

FRANCES SMITH-BEY a/k/a MUFTI ABDUL EL-MALIK- ALI
955755
Miami Correctional Facility - BH/IN
3038 West 850 South
Electronic Service Participant – Court Only

Brandyn Lee Arnold
INDIANA ATTORNEY GENERAL
brandyn.arnold@atg.in.gov

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com

Conner Ross Dickerson
Cohen & Malad, LLP
cdickerson@cohenandmalad.com

Sarah Jean Shores-Scisney
Stoll Keenon Ogden PLLC (SKO)
sarah.shores@skofirm.com

Georgianna Q. Tutwiler
HUME SMITH GEDDES GREEN & SIMMONS
gquinn@humesmith.com