UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MUFTI ABDUL EL-MALIK- ALI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-02365-SEB-TAB |
| ) | |
| B. MILLER, ) | |
| K PENNINGTON, ) | |
| K PRIOR, ) | |
| B GROVES, ) | |
| RITCHEY, ) | |
| M CONYERS, ) | |
| D. ALSIP, ) | |
| ) | |
| Defendants. ) | |

**Order Addressing Cross-Motions for Summary Judgment as to Medical Defendants**

Plaintiff Mufti Abdul El-Malik-Ali[1] is an Indiana inmate currently incarcerated at Miami Correctional Facility. He brings this action under 42 U.S.C. § 1983, alleging that the Medical Defendants (Brittney Moore-Groves and Kristine Pryor[2]) were deliberately indifferent to his serious medical needs because they failed to adequately treat him after he was injured while washing dishes with a chemical called Quat Plus.[3] The Medical Defendants filed a motion for summary judgment, and Mr. Ali filed a corresponding cross motion for summary judgment.

---

[1] Mr. Ali is also known as Frances Smith-Bey, the name associated with his Indiana Department of Correction Number—955755. *See* dkt. 78-1 at 8. Because he prefers to be known as Mr. Ali, the Court uses that name.

[2] Mr. Ali identified these defendants as "B. Groves" and "K. Prior" in his complaint. The **clerk is directed** to update the docket to reflect the correct names for these defendants.

[3] Mr. Ali also pursues claims against the other defendants. Those claims are the subject of separate motions for summary judgment, which the Court resolves by separate entries.

# I.
# Standard of Review

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support

the nonmoving party's case." *Id*. at 325. A party responding to a summary-judgment motion must "identify the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment." S.D. Ind. Local Rule 56-1(b).[4] "A party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." S.D. Ind. Local Rule 56-1(e).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

When the parties file cross-motions for summary judgment, the Court normally takes the motions "one at a time." *American Family Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016). That is, for each motion, the Court views and recites the evidence and draws all reasonable inferences "in favor of the non-moving party." *Id.*

---

[4] Mr. Ali did not file a stand-alone response to the Medical Defendants' summary-judgment motion. Instead, he filed his own motion for summary judgment. Dkt. 84. That motion, however, can also be read as responsive to the Medical Defendants' summary-judgment motion. Because Mr. Ali is pro se, the Court construes his motion liberally and considers the document as both a motion for summary judgment and a response brief.

## III.
## Factual Background[5]

Except where specifically identified, the following facts are undisputed:

### A. Exposure to Quat Plus

Mr. Ali's claims against the Medical Defendants are based on their response to injuries he alleges to have suffered after being exposed to Quat Plus while washing dishes on October 9, 2019. Dkt. 78-1 at 24 (Ali Dep.). On that day, Mr. Ali was working in the kitchen at Pendleton. *Id.* at 22. Mr. Ali's direct supervisor—an Aramark employee named Todd Neal—directed Mr. Ali to sanitize dishes in a sink containing a chemical called Quat Plus. *Id.* at 22–23. While Mr. Ali was sanitizing items in the sink containing Quat Plus, he got water containing Quat Plus on his hands, body, and shoes, and he felt a burning sensation. *Id.* at 23, 83. He testified that the Quat Plus solution dripped into his boot and soaked through his clothes, causing his groin area to get wet. *Id.* at 83–85. He testified that he believed that steam or vapor from the Quat Plus solution came into contact with

---

[5] Mr. Ali's motion, dkt. 84, and reply, dkt. 89, were not made under penalty of perjury. Thus, the factual statements in them are not admissible on their own unless they are supported by other admissible evidence. *See Collins v. Seeman*, 462 F.3d 757, 760 n.1 (7th Cir. 2006) (concluding that unsworn statements do not satisfy the requirement that summary judgment materials be "made upon personal knowledge" and "set forth such facts as would be admissible in evidence"). The Court is not obliged to scour the record looking for evidence to support Mr. Ali's factual statements. Thus, in preparing this factual summary, the Court has relied only on the admissible evidence cited in Mr. Ali's motion and reply.

As the Medical Defendants argue, *see* dkt. 86, many of the exhibits Mr. Ali cites are inadmissible for the purpose he cites, irrelevant, or both. For example, many are intended to show that his requests for medical treatment were ignored after the Medical Defendants' involvement in his care ended. *See, e.g.*, dkt. 84 at 11, 17, 34–35 (discussing dkt. 84-1 at 5–12, 18–19, 34–45, which relate to treatment by Nurse Practitioner Elaine Purdue; denial of grievance as untimely by C. Conyers; denial of treatment by LPN Graham; difficulty getting treatment from Dr. Hayes; refusal of additional treatment in response to November 16, 2019, request). Mr. Ali also includes documents that are irrelevant because they relate to claims of wrongdoing by Nurse Moore-Groves that are not related to this lawsuit and claims or wrongdoing by non-defendants. *See, e.g.*, dkt. 84 at 26–27 (discussing dkt. 84-1 at 27–31, which relate to Mr. Ali's claims that he was deprived of food for three days in September 2019 because Nurse Moore-Groves ordered a medical lay-in and then lost the order); *see also, e.g.*, dkt. 84 at 2 (discussing dkt. 84-1 at 55–70, which is a Report & Recommendation from another case not involving Nurse Moore-Groves, Nurse Pryor, or the incidents at issue in this lawsuit.).

his face. *Id.* at 84.  At his deposition, Mr. Ali testified that he normally used protective equipment to do the cleaning job—including big aprons, rubber neoprene gloves, and eyewear—but, because he was being rushed and was given a direct order by Mr. Neal, he did his job without protective equipment. *Id.*

After the burning sensation started, Mr. Ali approached Officer Justin Richey. *Id.* at 76. Officer Richey refused to let Mr. Ali go to medical right away. *Id.* at 76. Instead, Officer Richey made Mr. Ali go see Mr. Neal to get a report of offender injury before he could go to medical. *Id.* Mr. Ali consulted with Mr. Neal and, after he did so, Officer Richey opened the door and let him go to medical. *Id.* at 77–78.

### B. Interactions with Nurse Moore-Groves

Mr. Ali then went to the medical department, where he encountered Defendant Nurse Brittney Moore-Groves. *Id.* at 25. Nurse Moore-Groves refused to treat him and sent him back to the kitchen to get more information from Mr. Neal. *Id.* He got the information and returned to medical with a report of offender injury and material data safety sheet for Quat Plus. *Id.* at 25–26. When he returned, Nurse Moore-Groves was preparing supplies for the diabetic line, so she did not treat him right away. *Id.* at 26. Mr. Ali testified that, in total, 45 minutes to an hour passed between the time of his injury and the time he received treatment. *Id.* at 81.

After that, the parties' narratives diverge. Nurse Moore-Groves has submitted an affidavit stating as follows: When she saw Mr. Ali in nursing on October 9, 2019, he complained that he had suffered chemical burns. Dkt. 73-3 ¶ 5 (Moore-Groves Aff.). She observed redness with a few tiny black scabs on Mr. Ali's right hand. *Id.* She did not observe any blistering, so she did not believe that Mr. Ali had suffered a chemical burn. *Id.* She applied ointment and dressing to Mr. Ali's hand. *Id.*

At his deposition, Mr. Ali testified as follows: When he saw Nurse Moore-Groves, his hands were "hot" and "kind of blistered." Dkt. 78-1 at 27. In addition, his fingernails were "all bent and messed up" and his genitals and feet were burned, too. *Id.* Nurse Moore-Groves examined only his hands and would not examine his genitals or feet. *Id.* Nurse Moore-Groves cleaned his hands with soap and water, but the soap made him burn worse. *Id.* at 20. In an affidavit attached to his motion, Mr. Ali states that Nurse Moore-Groves treated him with "Silver Sulfadizine Cream[6] without proper decontamination" and had him fill out a health care request form. Dkt. 84-1 at 9.

### C. Interactions with Nurse Pryor

In this case, Mr. Ali seeks recovery for injuries he sustained after the October 9 exposure to Quat Plus. His claims against Nurse Pryor are based, in part, to the way she responded to a health care request form he submitted about 10 days earlier, as well as two other health care request forms he submitted on October 9 and October 15, respectively. Specifically, on September 30, 2019, Mr. Ali submitted a health care request form complaining that he sustained chemical burns on his hands while working in the kitchen on September 27, 2019. Dkt. 73-2 ¶ 5 (Pryor Aff.); *see also* dkt. 84-1 at 15. Nurse Pryor received the form on October 10, 2019, and responded that the issue had been resolved because Mr. Ali's medical records indicate that he had been seen by Nurse Moore-Groves the day before, his wounds had been cleaned, and his ointment and dressing had been applied. Dkt. 73-2 ¶ 5.

On October 9—after he saw Nurse Moore-Groves—Mr. Ali filled out another request for health care form, stating, "I am experiencing a bad reaction to being exposed to Quat Plus sanitizer while working in the kitchen. My skin burns and some black scabs and reddened hand with some

---

[6] "Silver Sulfadiazine cream is used to prevent and treat wound infections in patients with second- and third-degree burns." https://www.mayoclinic.org/drugs-supplements/silver-sulfadiazine-topical-route/proper-use/drg-20068819?p=1 (last visited Sept. 19, 2022).

puffiness. I need to see a doctor." Dkt. 84-1 at 13. The form bears a stamp indicating that it was received on October 10. *Id.* Nurse Pryor has submitted an affidavit stating that she responded to this form on October 10 as well, again stating that the issue had been resolved because Mr. Ali's medical records indicated that his wounds had been cleaned, and ointment and dressing had been applied. Dkt. 73-2 ¶ 6.

On October 15, 2019, Mr. Ali submitted another health care request form. Dkt. 73-3 at 1. This one states:

> I am experiencing burns, pains due to chemical burns . . . On about 9/30/19, 10/9/19/ I put in a 'Request for Health Car' after being exposed to chemical(s) that are, "Corrosive. Causes irreversible . . . skin burns" I asked to see the doctor each time and have yet to be referred. My hands both left and right were exposed and my left foot as well. It is now 10-15-19 I still have very visible effects that need attention on my hands & left food. I did come over with the injury report already but care has been delaied. My hands & fingers hurt badly. I NEED TO SEE A SKIN DOCTOR.

Dkt. 73-3 at 1 (spelling and punctuation errors in original). Nurse Pryor has submitted an affidavit stating that she received the form on October 17 and responded that Mr. Ali was scheduled to see the nurse practitioner on October 20, 2019, and was to be provided gloves for his kitchen job until then. *Id.*; dkt. 73-2 ¶ 7.

In her affidavit, Nurse Pryor states that she does not recall having any face-to-face interactions with Mr. Ali. Dkt. 73-2 ¶ 8. At his deposition, Mr. Ali testified that, after he submitted these health care request forms, Nurse Pryor called him over and, "as soon as she seen it was me, it was like no go." Dkt. 78-1 at 37. He testified that he believes that, if Nurse Pryor would have just examined him, she would have seen that his condition was bad enough to warrant immediate treatment. *Id.* at 38.

### D. Additional Symptoms and Treatment

Mr. Ali was seen by non-party Nurse Practitioner Elaine Purdue on October 20, 2019. *Id.* at 29. Nurse Practitioner Purdue's treatment notes state that Mr. Ali had multiple circular spots on his hands that appeared to be healing appropriately, but Mr. Ali testified that some spots were not healing appropriately. *Id.* Nurse Practitioner Purdue's treatment notes state that there was no drainage or signs of infection and no redness or warmth associated with the injuries in Mr. Ali's hand. *Id.* at 30–32. Mr. Ali agreed that no spots were draining but testified that some were wet to the touch. *Id.* at 31. Mr. Ali also testified that Nurse Practitioner Purdue did not examine his genitals or foot, even though he asked her to do so. *Id.* at 29. After the appointment, Nurse Jennifer Stern gave Mr. Ali Band-Aids and antibiotic ointment and educated him on wound care. *Id.* at 31.

On November 29, 2019, Mr. Ali saw Nurse Kylie Graham. *Id.* at 35. Nurse Graham noted in her treatment note that the affected areas had healed, but Mr. Ali disputed that characterization at his deposition. *Id.* Nurse Graham also wrote that Mr. Ali was still experiencing uncomfortable symptoms. *Id.* at 36. Mr. Ali agreed. *Id.*[7] He admitted, however, that no medical professional at Pendleton ever diagnosed him with chemical burns. *Id.* at 39.

## IV.
## Discussion

Mr. Ali claims that Nurse Moore-Groves and Nurse Pryor were deliberately indifferent to his serious medical needs. "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v.*

---

[7] At his deposition, Mr. Ali testified that, to this day, he experiences ill effects from his contact with Quat Plus—including spontaneous ejaculation and "needle-like pains" in his hands. *Id.* at 36, 43. It is questionable whether such testimony would be admissible at trial because, as a lay witness, Mr. Ali cannot testify to causation, *see Korte v. Exxonmobil Coal USA, Inc.*, 164 F. App'x 553, 556 (7th Cir. 2006) ("Expert testimony is needed to establish causation in cases alleging an adverse health effect when the medical effects of exposure to the toxin are not within the ken of the ordinary person.") (cleaned up). The Court need not resolve that issue here, though, because Mr. Ali can resolve the question of whether Mr. Ali suffered from an objectively serious medical condition without reliance on that testimony.

*Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

### A. Objectively Serious Medical Condition

The Court cannot grant summary judgment to either Mr. Ali or the Medical Defendants on the question of whether Mr. Ali suffered from an objectively serious medical condition because disputed questions of fact remain for trial. For purposes of the Eighth Amendment, an objectively serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Thomas*, 2 F.4th at 721–22 (cleaned up).

Taking the facts in the light most favorable to the Medical Defendants, a reasonable jury might rely on Mr. Ali's medical records and Nurse Moore-Groves's testimony to conclude that the injuries to Mr. Ali's hands were minimal—amounting to nothing more than tiny scabs that required only minimal care and healed quickly. A reasonable jury could also conclude that the injuries to Mr. Ali's genitals and feet—which were, unlike his hands, covered with clothing at the time they were exposed to Quat Plus—were no worse than the injuries to his hands. *See generally* dkt. 72 at 7–9 (arguing that Mr. Ali did not suffer from an objectively serious medical condition). That is, a reasonable jury could conclude that Mr. Ali's medical condition was not objectively serious enough to implicate the Eighth Amendment. *See Snipes v. DeTella*, 95 F.3d 586, 591 n.1 (7th Cir. 1996)

(opining that a toe with a toenail that had been removed was not an objectively serious medical need).

But, taking the facts in the light most favorable to Mr. Ali, a reasonable jury could credit Mr. Ali's testimony that he suffered painful blistering on his hands and burns to his genitals and foot after coming into contact with an industrial cleaning solution. And, while Mr. Ali was never diagnosed with chemical burns on his genitals—in part, perhaps, because no one at Pendleton ever examined his genitals—a reasonable jury could conclude that burns on the genitals following a chemical exposure are the type of condition that is so obvious that even a lay person would recognize the need for a doctor's attention.[8] Likewise, a reasonable jury could credit Mr. Ali's testimony and infer that his condition was serious enough to mandate treatment by a doctor from the fact that Nurse Moore-Groves did, in fact, provide treatment in the form of Silver Sulfadiazine cream (which is used to treat second- and third-degree burns) and told Mr. Ali to fill out a health care request form so that he could see a doctor.

Because Mr. Ali has not established, as matter of law, that he suffered from an objectively serious medical condition, his motion for summary judgment must be denied. The Medical Defendants can, however, still prevail with their motions for summary judgment if they establish

---

[8] The Medical Defendants complain that Mr. Ali has not submitted any evidence about the injuries to his genitals and foot "aside from his sworn testimony." *See* dkt. 72 at 8. But Mr. Ali is competent to testify to his personal observations about his injuries, *see* Fed. R. Evid. 701 (a lay witness may offer testimony that is "rationally based on the witness's perception" and "not based on scientific, technical, or other specialized knowledge"), and the Court must accept that testimony as true for purposes of summary judgment.

that they are entitled to judgment as a matter of law on the question of whether they were deliberately indifferent to Mr. Ali's serious medical condition.

### B. Deliberate Indifference

Deliberate indifference requires more than negligence or even objective recklessness. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) Mr. Ali "must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Id*. (cleaned up; emphasis in original). "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Id*. The Seventh Circuit has "held that a jury can infer deliberate indifference when a treatment decision is so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Id.* (cleaned up). In addition, "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022) (cleaned up). But where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently. *Dean*, 18 F.4th at 241–42.

#### 1. Nurse Moore-Groves

The Court cannot grant summary judgment to Nurse Moore-Groves on the question of whether she was deliberately indifferent to Mr. Ali's serious medical condition because fact questions remain for trial.

Taking the evidence in the light most favorable to Nurse Moore-Groves, a reasonable jury could credit her testimony that she only observed small scabs on Mr. Ali's hands, did not think he

11

was suffering from chemical burns, and exercised her medical judgment to treat Mr. Ali by cleaning the wounds with soap and water, applying ointment, and dressing the wounds. Although Nurse Moore-Groves has not explained why she failed to examine Mr. Ali's genitals and foot, *see* dkt. 73-1, a reasonable jury might infer—as Nurse Moore-Groves's counsel invites the Court to do, *see* dkt. 72 at 8–9—that there was no need to examine those areas because they were covered by clothing. That is, a reasonable jury might conclude that Nurse Moore-Groves was not deliberately indifferent to Mr. Ali's serious medical condition.

But, taking the evidence in the light most favorable to Mr. Ali, a reasonable jury could credit Mr. Ali's testimony that he was suffering from burns on his genitals and feet after being exposed to an industrial cleaning solution and that, despite knowing this, Nurse Moore-Groves simply refused to examine those areas of his body. In this iteration, the fact that Nurse Moore-Groves cleaned and treated Mr. Ali's hand weighs against her because a reasonable jury could infer that she could easily have done the same for his genitals and feet and knew such treatment was necessary. Absent some explanation from Nurse Moore-Groves as to why she failed to examine his genitals and feet—which Nurse Moore-Groves has not provided, *see* dkt. 73-1—a reasonable jury could conclude that her decision not to do so was *not* the result of an exercise of her professional medical judgment but instead the result of deliberate indifference.

Accordingly, the Medical Defendants' motion for summary judgment must be denied as to Mr. Ali's claims against Nurse Moore-Groves.

### 2. Nurse Pryor

Mr. Ali's claim against Nurse Pryor does not fare so well. The undisputed record at summary judgment establishes that Nurse Pryor was not personally involved in Mr. Ali's care. Instead, her involvement was limited to reviewing his health care request forms. Nurse Pryor has

12

testified without contradiction that she responded to the September 30 and October 9 forms on October 10 by saying that the issue had been resolved because Mr. Ali's medical records reflected that Nurse Moore-Groves had treated his wounds the previous day. Mr. Ali, of course, disputes that the issue had *in fact* been resolved, but that is not the question here. The question is whether Nurse Pryor thought the issue had been resolved, and Mr. Ali has not designated evidence from which a reasonable jury could conclude that she knew that Mr. Ali needed more treatment, knew that failing to provide it exposed him to a substantial risk of significant harm, and ignored that risk. Likewise, the undisputed record at summary judgment establishes that Nurse Pryor responded to the October 15 form on October 17 by saying—truthfully—that Mr. Ali was scheduled to see Nurse Practitioner Perdue in three days. Mr. Ali has not designated any evidence from which a reasonable jury could conclude that Nurse Pryor knew that making Mr. Ali wait three days to see Nurse Practitioner Perdue—as opposed to obtaining immediate care for him—exposed him to a substantial risk of significant harm.

      The Court accepts as true, as it must, that Nurse Pryor called Mr. Ali over after seeing his health care request forms and then turned him away. But that evidence, standing alone, would not allow a reasonable jury to conclude that Nurse Pryor knew she was exposing Mr. Ali to a substantial risk of significant harm by turning him away. If anything, the testimony is consistent with Nurse Pryor's version of events—that, as to the September 30 and October 9 forms, she thought Nurse Moore-Groves had already handled the issue and that, as to the October 15 form, she knew that Nurse Practitioner Perdue would be seeing him in three days. Mr. Ali wishes that Nurse Pryor had examined him and believes that, if she had, she would have known that he needed

immediate care. But that line of argument at best would establish that Nurse Pryor was negligent, and deliberate indifference requires more. *See Dean*, 18 F.4th at 241.

In summary, even taking the facts in the light most favorable to Mr. Ali, no reasonable jury could conclude that Nurse Pryor was deliberately indifferent to his serious medical needs. Thus, the Medical Defendants' motion for summary judgment must be granted as to Nurse Pryor.

## V.
## Conclusion

For the reasons stated above, Mr. Ali's motion for summary judgment, dkt. [84], is **denied**. In addition, the Medical Defendants' motion for summary judgment, dkt. [71], is **granted** as to Mr. Ali's claims against Nurse Pryor and **denied** as to his claims against Nurse Moore-Groves. Mr. Ali's claims against Nurse Pryor are **dismissed with prejudice**. Because Mr. Ali's claims against Nurse Moore-Groves and Defendant Justin Richey (addressed by separate entry) have not yet been resolved, no final judgment will enter at this time.

The **clerk is directed** to update the docket to reflect the proper names for the Medical Defendants as follows: Brittney Moore-Groves (currently identified as "B. Groves") and Kristine Pryor (currently identified as "K. Prior"). The **clerk is directed** to then terminate Defendant Pryor as a defendant.

Mr. Ali's claims against Nurse Moore-Groves and Defendant Justin Richey will be resolved by settlement or trial. If Mr. Ali would like the Court to attempt to recruit counsel to represent him, he must complete and return the enclosed form motion for assistance with recruiting counsel within **30 days of the date of this Order**. If he fails to do so, the Court will assume that he intends to proceed pro se with this case through settlement, if any, and trial, if necessary.

The **clerk is directed** to enclose a blank form motion for assistance with recruiting counsel with Mr. Ali's copy of this Order.

**IT IS SO ORDERED.**

Date: 9/22/2022

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

FRANCES SMITH-BEY a/k/a MUFTI ABDUL EL-MALIK- ALI
955755
Miami Correctional Facility - BH/IN
3038 West 850 South
Electronic Service Participant – Court Only

Brandyn Lee Arnold
INDIANA ATTORNEY GENERAL
brandyn.arnold@atg.in.gov

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com

Conner Ross Dickerson
Cohen & Malad, LLP
cdickerson@cohenandmalad.com

Sarah Jean Shores-Scisney
Stoll Keenon Ogden PLLC (SKO)
sarah.shores@skofirm.com

Georgianna Q. Tutwiler
HUME SMITH GEDDES GREEN & SIMMONS
gquinn@humesmith.com